JONATHAN A. STIEGLITZ
(SBN 278028)
jonathan.a.stieglitz@gmail.com
THE LAW OFFICES OF
JONATHAN A. STIEGLITZ
11845 W. Olympic Blvd., Ste. 800
Los Angeles, California 90064
Telephone:   (323) 979-2063
Facsimile:   (323) 488-6748

Attorney for Plaintiff
Kelly Dodson

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Kelly Dodson | Case No.: 2:23-cv-03938 DSF-PVC |
| Plaintiff, | First Amended Complaint For: |
| v. | 1.   RECOVERY OF BENEFITS UNDER 29 U.S.C. §1132 (a)(1)(B) |
| Sephora USA, Inc., United Healthcare Insurance Company. and DOES 1-10, | |
| Defendant. | Damages - $90,000.00 |

Amended Complaint

Plaintiff Kelly Dodson (hereinafter referred to as "PLAINTIFF" or "Patient") complains and alleges:

## PARTIES

1.     DEFENDANT, United Healthcare Insurance Company[1] ("DEFENDANT" or "UHS") is and was licensed to do business in and is and was doing business in the State of California. DEFENDANT is, in fact, transacting business in the State of California and is thereby subject to the laws and regulations of the State of California.

2.     Advanced Weight Loss Surgical Association ("Advanced") is and at all relevant times was a medical company, organized and existing under the laws of the State of California. Advanced Weight Loss Surgical Association is and at all relevant times was in good standing under the laws of the State of California.

3.     Minimally Invasive Surgical Association ("Minimally") is and at all relevant times was a medical company, organized and existing under the laws of the State of California. Minimally is and at all relevant times was in good standing under the laws of the State of California.

4.     Advanced and Minimally together will be referred to as "Medical Providers".

5.     Plaintiff, Kelly Dodson ("Patient"), is and at all relevant times was a resident of the State of California.

6.     The true names and capacities, whether individual, corporate, associate, or otherwise, of defendants DOES 1 through 10, inclusive, are unknown to PLAINTIFFS, who therefore sues said defendants by such fictitious names.

---

[1] Plaintiff identifies United Healthcare Insurance Co., based solely on Defendant and United's representations that United Healthcare Insurance Co. is the proper party. Plaintiff and Medical Providers have numerous document listing United Healthcare Services, Inc. as a relevant party and likely defendant.

PLAINTIFFS are informed and believes and thereon alleges that each of the defendants designated herein as a DOE is legally responsible in some manner for the events and happenings referred to herein and legally caused injury and damages proximately thereby to PLAINTIFFS. PLAINTIFFS will seek leave of this Court to amend this Complaint to insert their true names and capacities in place and instead of the fictitious names when they become known to it.

7.     At all times herein mentioned, unless otherwise indicated, DEFENDANT/s were the agents and/or employees of each of the remaining defendants and were at all times acting within the purpose and scope of said agency and employment, and each defendant has ratified and approved the acts of his agent. At all times herein mentioned, DEFENDANT/s had actual or ostensible authority to act on each other's behalf in certifying or authorizing the provision of services; processing and administering the claims and appeals; pricing the claims; approving or denying the claims; directing each other as to whether and/or how to pay claims; issuing remittance advices and explanations of benefits statements; making payments to Medical Provider and Patient.

## GENERAL ALLEGATIONS

8.     This complaint arises out of the failure of DEFENDANT to make proper payments and/or the underpayment to Medical Providers for surgical care, treatment and procedures provided to Plaintiff, who is an insured, member, policyholder, certificate-holder and is and was otherwise covered for health, hospitalization and major medical insurance through policies or certificates of insurance issued and underwritten by UHS and DOES 1 through 10, inclusive.

9.     Patient received insurance through Defendant, Patient's employer. Patient's receipt of health benefits through Defendant is a significant part of Patient's compensation from Defendant. Patient obtains insurance through Defendant for the specific purpose of ensuring that Patient will have access to medically necessary treatments, care, procedures, and surgeries by medical

AMENDED COMPLAINT

practitioners like Medical Providers and ensuring that DEFENDANT would pay for the health care expenses incurred by Patient.

10.     Patient pays Patient's insurance premiums based on the information provided to Patient by UHS and as Patient is directed to do by UHS.

11.     It is standard practice in the health care industry that when medical providers enter into a written preferred provider's contract, medical providers agree to accept reimbursement that is discounted from the medical provider's total billed charges in exchange for the benefits of being preferred or contracted providers.

12.     Those benefits include an increased volume of business because the health plan provides financial and other incentives to its members to receive their medical care and treatments from the contracted providers, such as advertising that the providers are "in network" and allowing the members to pay lower co-payments and deductibles to obtain care and treatment from contracted providers.

13.     Conversely, when medical providers, such as Medical Providers, do not have a written contract or preferred provider agreement, the medical providers receive no referrals.

14.     The medical providers have no obligation to reduce their charges. The health plan is not entitled to a discount from the medical providers' total bill charge for the services rendered, because it is not providing the medical providers with in-network medical providers benefits, such as increased patient volume and direct payment obligations.

15.     Plaintiff understands Plaintiff's health plan to be a plan governed by the Employee Retirement Income Securities Act of 1974 ("ERISA"). As a result, Plaintiff contends that Plaintiff's health plan is an ERISA health plan ("ERISA Plan").

16.     UHS has failed to properly pay for any of the medical services received by Plaintiff and provided by Medical Providers. As result, Plaintiff brought suit seeking proper reimbursement under Plaintiff's health plan.

- 4 -

1

**SPECIFIC FACTS**

2      17.    On January 22, 2019, February 26, 2019, and March 1, 2019, Plaintiff

3    received medical services from Medical Providers.

4      18.    The medical procedures were successful.

5      19.    Following the procedures, Medical Providers submitted bills both to

6    Plaintiff and to UHS in connection with the services provided to Plaintiff for a total

7    amount of $90,000.00.

8      20.    UHS failed to make proper payment in connection with medical

9    services provided. UHS paid $538.78.

10      21.    According to Plaintiff's health plan UHS is obligated to pay the

11    Eligible Expenses. "Eligible Expenses are determined, based on: Negotiated rates

12    agreed to by the out-of-Network provider and either us or one of our vendors,

13    affiliates or subcontractors. If rates have not been negotiated, the one of the

14    following amounts: Allowed Amounts are determined based on 200% of the

15    published rates allowed by the Centers for Medicare and Medicaid Services (CMS)

16    for Medicare for the same or similar service within the geographic market… When

17    a rate is not published by CMS for the service, we use an available gap

18    methodology to determine a rate for the service as follows:… we use a gap

19    methodology established by OptumInsight and/or a third party vendor that uses a

20    relative value scale. The relative value scale is usually based on the difficulty, time,

21    work, risk and resources of the service…When a rate is not published by CMS for

22    the service and a gap methodology does not apply to the service, the Eligible

23    Expense is based on 50% of the provider's billed charge."[2]

24

25      [2] Plaintiff contends that the language quoted above and found in Plaintiff's
health plan is really a place holder which ultimately means nothing. UHS puts this
26    language into all its plans and then pays or doesn't pay in whatever manner it so
chooses without any real connection to the specific plan language.
27

28

22.     First, UHS did not attempt a negotiation despite Plaintiff's and Medical Provider's requests for UHS to negotiate. Pursuant to Plaintiffs health plan, UHS is obligated to negotiate or at least attempt a negotiation with the health providers. Plaintiff asserts that UHS' failure to even attempt a negotiation is a breach of Plaintiff's health plan agreement.

23.     Second, Plaintiff argues that UHS paid less than "200% of the published rates allowed by the Centers for Medicare and Medicaid Services (CMS) for Medicare for the same or similar service within the geographic market."

24.     UHS refused to process the claim until medical records were received.

25.     Medical records were sent out on August 19, 2020 after receiving a request on August 12, 2020.

26.     UHS claimed not to have received the medical records on January 29, 2021. On that same day, medical records were faxed to UHS.

27.     UHS confirmed receipt on March 3, 2021.

28.     UHS denied the claim.

29.     Appeals were sent out to UHS on August 7, 2020 and September 11, 2020.

30.     Final appeals were sent out on July 21, 2021.

31.     UHS stated that all appeals had been exhausted.

32.     UHS refused to change its determination and nothing further was paid.

33.     Plaintiff is now responsible to Medical Providers for the difference between the full cost of the medical procedure and the minimal amount paid.

34.     Plaintiff asserts that the very reason that Plaintiff's health plan indicates that the plan will at least attempt a negotiation is to prevent Plaintiff from being left with this responsibility.

35.     A specific benefit of Plaintiff's health plan is that UHS will at least attempt a negotiation to prevent Plaintiff from being left with the responsibility for the bill. UHS simply did not do this.

36.     Plaintiff asserts that it is UHS' obligation to attempt a negotiation with medical providers like Medical Providers to provide this benefit.

37.     UHS did not attempt any negotiation at any time in connection with the medical services received by Plaintiff.

38.     At no time in the appeals letters does UHS indicate that it ever attempted a negotiation with Medical Providers to limit Plaintiff's responsibility.

39.     Plaintiff seeks to obtain proper reimbursement under the ERISA plan to offset the cost that Plaintiff has incurred with Medical Providers.

## FIRST CAUSE OF ACTION

## ENFORCEMENT UNDER 29 U.S.C § 1132 (a)(1)(B) FOR FAILURE TO PAY ERISA PLAN BENEFITS

40.     Plaintiff incorporates by reference all previous paragraphs as though fully set forth herein.

41.     This cause of action is alleged by Patient for relief in connection with claims for medical services rendered in connection with healthcare benefits plans administered and/or underwritten by UHS.

42.     Patient seeks to recover benefits and enforce rights to benefits under 29 U.S.C. §1132 (a)(1)(B). Patient is a "beneficiary" entitled to collect benefits and is the "claimant" for purposes of the ERISA statute and regulations. ERISA authorizes actions under 29 U.S.C. § 1132 (a)(1)(B) to be brought directly against UHS the party with actual control over the benefit and payment determinations with respect to medical services.

43.     UHS is the payor of benefits.

44.     UHS is the administrator responsible for properly adjudicating claims.

45.     UHS is the administrator responsible for at least attempting a negotiation with Medical Providers and to prevent Plaintiff from being left to pay Medical Providers.

46.     By reason of the foregoing, Patient is entitled to recover ERISA

benefits due and owing in an amount to be proven at trial, and Patient seeks recovery of such benefits by way of the present action.

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

- 8 -

## **PRAYER FOR RELIEF**

**WHEREFORE,** Kelly Dodson prays for judgment against defendants as follows:

1.    For compensatory damages in an amount to be determined, plus statutory interest;

2.    For expectation damages in an amount to be determined, plus statutory interest;[3]

3.    For restitution in an amount to be determined, plus statutory interest;

4.    For a declaration that UHS is obligated to pay plaintiff all monies owed for services rendered;

5.    For Attorney Fees; and

6.    For such other relief as the Court deems just and appropriate.

Dated: June 23, 2023                    LAW OFFICE OF JONATHAN A.
                                        STIEGLITZ

                                        By: /s/ Jonathan A. Stieglitz
                                            JONATHAN A. STIEGLITZ
                                            Kelly Dodson

---

[3] To the extent Defendant and UHS would argue that compensatory cannot mean expectation damages base don the health plan, Plaintiff separately prays for it here.

- 9 -
AMENDED COMPLAINT